BENJAMIN MacCLELLAN, PLAINTIFF, v. GENERAL CASU-
ALTY AND SURETY COMPANY, A CORPORATION, DE-
FENDANT.

ADELE ROWAN, PLAINTIFF, v. GENERAL CASUALTY AND
SURETY COMPANY, A CORPORATION, DEFENDANT.

LAURA O'NEIL, PLAINTIFF, v. GENERAL CASUALTY AND
SURETY COMPANY, A CORPORATION, DEFENDANT.

Decided November 13, 1926.

Insurance—Liability—Auto Bus—Carrier Company Contract Pro-
vided For Insurance Against Accident in Atlantic City and
Vicinity—Accident Occurred Eighteen Miles Outside Atlantic
City—Held, That it was Within "Vicinity"—Policy of In-
surance Considered at Length Together With Riders At-
tached, and Held, That the Judge's Charge That it was Un-
necessary to Consider Statutory Obligations Imposed by
Chapter 136 of the Laws of 1916, Since the Terms of the
Policy Were Ample For the Plaintiffs to Maintain Their
Action was Correct—Contract Found to be in Harmony Both
With Statutory and Public Policy—Nothing in Statute Which
Bars the Increase of the Amount of Insurance or the Liability
of Insurer Above the Statutory Sum.

On appeal from the Atlantic County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH
and CAMPBELL.

For the appellants, *William Charlton.*

For the respondent, *Paul M. Salsburg.*

PER CURIAM.

The cases on appeal, by consent of counsel, were tried to-
gether before Judge Schimpf, sitting without a jury. The

actions before him were predicated upon separate judgments obtained theretofore by the plaintiffs in separate actions brought by each in the Atlantic County Circuit Court against Cleveland G. Waites. Waites was the owner of a jitney under the ordinances and regulations of the city of Atlantic City, which regulations are solely based upon chapter 136 (*Pamph. L.* 1916) and the amendments thereof. The section of the statute referred to, *inter alia,* provides that no auto bus, as defined by the act, shall be operated wholly or partly along any street, &c., unless the owner or owners thereof shall have the consent of the board or body having control of public streets in such city for the operation of the bus, and that "no such operation shall be permitted until the owner of such auto bus in any city shall have filed, with the chief fiscal officer of the city in which said auto bus shall be licensed and operated, an insurance policy of a company duly licensed to transact business under the insurance laws of the State of New Jersey in the sum of $5,000 against loss from the liability imposed by law upon the auto bus owner for damages on account of bodily injury or death suffered by any person or persons as a result of accident occurring by reason of the ownership, maintenance and use of such auto bus upon the public streets of such city" * * *. A policy of insurance was issued to Waites by the defendant insurance company upon his jitney in the sum of $5,000 as required by the act referred to. The schedule attached to the policy provides in statement 7: "The purpose for which the above-described automobile vehicles are to be used are jitney." Statement 8: "The automobiles covered hereby are and will be principally maintained and garaged in the city or town of Atlantic City, New Jersey." Statement 9: "The automobiles covered hereby are and will be principally used in the city or town [and its vicinity] of Atlantic City, New Jersey."

After a stipulation was entered into between counsel to the effect that the three cases be tried together and that the final judgment of each plaintiff against the jitney owner, Waites, is within the limits of the insurance policy as stipulated in condition L, and has not been paid, it was further

stipulated that the accident occurred at Fifth avenue and White Horse pike, in Atlantic county, October 7th, 1923, and that the amount of the judgment obtained by Laura O'Neil against Waites is $650. Counsel of plaintiffs then offered the insurance policy issued by the defendant company to Waites in evidence, and by consent of counsel of defendant company it was so received by the court. The plaintiffs then rested.

Counsel of defendant moved for a direction of a verdict for the defendant on the ground "that one of the essentials of the plaintiffs' proof is that the defendant Waites had complied with the terms and conditions of the policy. That is denied in the answer, and there is no proof here." Whereupon, the court said: "Well, I think if you want to I will let you open your case to put in your defense." There was no objection to this course and the defendant put in its defense.

Among the findings of the fact made by the trial judge, he decided, as a matter of law, that since the facts show that the auto bus, at the time of the accident, was operated for hire, and though the accident occurred at a distance of eighteen miles from Atlantic City, about a mile or a mile and a half from Egg Harbor, in Atlantic county, and while the auto bus was enroute to Atlantic City, it came within the description of statement 9 of the policy of insurance of an auto bus being operated within the vicinity of Atlantic City. There was no error in this judicial finding.

The late Vice Chancellor Stevens, in *Madison* v. *Morristown Gaslight Co.,* 63 *N. J. Eq.* 120, sheds much light on what is meant by the term "vicinity" (at *p.* 122). This profound jurist, after discussing the interpretation to be given to the word vicinity as found in the contract which he was then construing, says: "Vicinity is defined by Webster as 'that which is near and not remote.'" Certainly, to a legislature speaking from Trenton, sixty miles distant, Madison would be understood as being in the vicinity of—near—not remote from Morristown. In Jacob's Law Dictionary the term *"vicenetum"* is defined as *locus quem vicini habitant,*

and Burrill's Law Dictionary it is said to have been anciently understood of the same vill or the parts adjacent, but in later law of the same county.

And, so, there may be added to what has been said that from time immemorial it has been understood that a jury of the vicinage includes a citizen living in the remotest part of a county, regardless of its territorial extent, and at a great distance from the place where the litigants reside and whose controversy is to be tried by a jury. In *Connell* v. *Commonwealth Casualty Co.,* 96 *N. J. L.* 510, our Court of Errors and Appeals held that Newark, a city in Essex county, came within the term "vicinity" of Passaic, in Passaic county, and Garfield and Lodi in Bergen county, under a clause in the insurance policy which was as follows: "The purpose for which the automobiles are to be used, and will continue to be used, during the period of this policy, are 'passenger' service, in Passaic, N. J., Garfield, N. J., Lodi, N. J., and vicinity." The accident happened in Newark, New Jersey. As the accident in the present case happened near Egg Harbor, in the same county where Atlantic City is situate, and the policy of insurance upon which the plaintiffs' actions are based, contains a like clause to that which was interpreted in *Connell* v. *Commonwealth Casualty Co., supra,* the finding of the trial judge that Egg Harbor was in the vicinity of Atlantic City cannot be successfully assailed.

The only other ground of appeal argued in appellant's brief and on which a reversal of the judgments under review is urged, is that the trial judge erred in determining that it was unnecessary to consider the statutory obligations contemplated by chapter 136, *supra,* since the terms of the policy of insurance sued upon were ample for the plaintiffs to maintain their actions against the defendant company on the contract of insurance entered into by it with Waites, the jitney owner and operator. The argument advanced on behalf of the appellant in support of the position taken by it is that chapter 136 related to "injuries suffered while the automobile was being operated upon the public streets of Atlantic City, and indiscriminately accepting and discharging

such persons as offer themselves for transportation at various points along the route," and that this was not the case here, since it appeared that the accident occurred eighteen miles from Atlantic City, "and that it was not intended to cover persons riding or walking at a distance of eighteen miles from a municipality * * * and that the defendant-appellant, in making its contract comply with the law [never], intended that it should be bound to protect such persons and have the benefits of the policy inure to them." This position is untenable and the fabric on which it rests finds no support from a fair reading of the terms of the contract of insurance, and is completely subverted by the express terms of the two riders attached to the policy. The policy, on its face, appears to be a general one indemnifying the assured "against loss from the liability imposed by law upon the assured for damages" * * * caused by automobile vehicles described in statement number 5 of the schedule, or by the loading or unloading of merchandise carried on vehicles of the commercial type, within the United States and Canada, subject to certain conditions. Thus, it is to be seen that the insurance was against accidents by automobile vehicles without regard whether the accident occurred within the United States or Canada, in cases where liability was imposed by law. This liability manifestly could arise from the common law or from a statute. By clause 5 of condition A in the contract of insurance, the defendant exempted itself from liability, in case the automobile vehicle was "being used for rental or livery purposes or for the carrying of passengers for a consideration." By "Statement 9" of the schedule of the policy, as has been already alluded to, the automobile vehicles are to be principally used in Atlantic City and its vicinity. By the first rider attached to the policy it was agreed between the insurer and the assured that clause 5 of condition A reading: "Being used for rental or livery purposes or for carrying passengers for a consideration is hereby eliminated and shall form no part of the policy contract." The cancellation of this clause was, in legal effect, an agreement on part of the insurer to indemnify the assured against loss from

the liability imposed by law upon the latter "for damages on account of bodily injuries, including death resulting at any time therefrom, accidently suffered or alleged to have been suffered by any persons * * * caused by automobile vehicles," being used for rental or livery purposes or for the carrying of passengers for a consideration. The only limitation on the general terms of the policy in that regard is, that the accident must have taken place in Atlantic City or in its vicinity.

Moreover, if there could exist the shadow of a doubt as to whether the liability imposed by law on the insurer must be determined solely by the provisions of chapter 136, *supra*, that doubt is dissipated by the express provisions of the second rider attached to the insurance contract, which, among other things, stipulates: "Notwithstanding anything herein contained to the contrary, this company will pay any final judgment within the limits of this policy as stipulated in condition L, recovered by any person or persons on account of the ownership, maintenance and use of the automobile described therein, or any fault in respect thereto, and it is further understood that this contract shall be for the benefit of every person suffering loss, damages or injury as decribed in this contract or as described in the terms of an act," referring to chapter 136 of the laws of 1916, *supra*. So, it is quite manifest that it was the express design of the defendant company, as unequivocally stated by it in the rider attached to the policy, not only to obligate itself to pay any judgment recovered by any person suffering loss, damage or injury against the assured in the circumstances as described in the contract of insurance, but also as described in the terms of the statute. The circumstance that the insurer contracted to obligate itself to a greater extent to the assured and to those for whose benefit the contract was made than was required by the statute is no valid defense. Its defense of non-liability on its contract is in the nature of a plea of *ultra vires*. It cannot properly avail itself of such a defense. There is naught in the contract which contravenes the statute or which is against the declared statutory policy of this state.

The contract appears to be rather in harmony with the public policy.

The prime object of the statute was to protect the public by providing a means by which persons injured by automobile vehicles owned and maintained by an irresponsible owner should be enabled to collect a judgment obtained against such owner. The statute therefore ordained compulsory insurance on part of the owner of an automobile vehicle before he shall be permitted to lawfully operate or maintain such vehicle to carry passengers for hire in the public street. The statute fixes the amount of insurance to be carried by the owner for the benefit of those persons injured, &c. There is nothing in the statute which in anywise bars an insurance company from increasing the statutory sum of insurance or from extending its liability by its contract of insurance.

We, therefore, agree with the view entertained by the learned trial judge that the plaintiffs were entitled, independently of the statute, to maintain their actions on the contract of insurance.

Each of the judgments appealed from is affirmed, with costs.