TUNG TON a/k/a JUNG TON, Plaintiff

v.

SIAUNI AH SAM
(d/b/a Black Ace Taxi Service) and AMERICAN HOME AS-
SURANCE CO., Defendants

No. 754-1969

High Court of American Samoa

Civil Jurisdiction, Trial Division

April 5, 1971

Heard before GOSS, *Associate Justice*, and T. A. MASA-
NIAI, *Associate Judge*.
Frank Swett, Ivi S. Pele, Counsel for Plaintiff.
Herbert W. Clarke, Counsel for Defendant.

FINDINGS & CONCLUSIONS DELIVERED FOR THE COURT

GOSS, *Presiding Judge*.

This matter came before the Court on a complaint for
damages for injuries to Plaintiff. To facilitate trial, Loke
Ioane, an unrepresented prisoner from Western Samoa,
was dismissed as a Defendant upon stipulation of parties.
After consideration of the evidence herein and the law,
Judgment was entered February 12, 1971. Upon request of
Defendant, the Court makes it Findings of Fact and Con-
clusions of Law as follows:

FINDINGS OF FACT

1. Plaintiff is a resident of Taiwan, Republic of China,
and on March 5, 1968, he was working in American Samoa
as Engineer of a fishing vessel, Shing Fu Chen No. 3.

2. On March 5, 1968, Defendant Siauni Ah Sam operated the Black Ace Taxi Service, a common carrier.

3. Defendant American Home Assurance Co., a stock insurance company doing business in the Territory of American Samoa, was insurer of the Defendant Ah Sam's taxicab at the times herein concerned.

4. Loke Ioane, the brother of the Defendant Siauni Ah Sam, was an employee of Ah Sam as driver and operator of a taxi engaged for transportation by Plaintiff and others on March 5, 1968. Plaintiff and his companions were taken from the cannery area to the Pago Bar, where Ioane procured Tali Hunkin. The group then proceeded by taxi to Lauli'i Falls for the purpose of illegal prostitution. Some of the group engaged in intercourse with Miss Hunkin. Plaintiff did not.

5. An argument ensued over fare and over the fact that some of the group declined Miss Hunkin. Ioane drove the group to the village of Aumi, and without legal justification, while Plaintiff was within the taxi, Ioane struck Plaintiff about the head and shoulders with a metal object. Ioane forced the Plaintiff from the taxi, and continued beating him about the head and shoulders. He caused severe injuries—scalp laceration, and contusions to left shoulder, forearm and left side of neck, herein designated Battery # 1.

Shortly thereafter, on the outskirts of the same village, Ioane wilfully drove the said taxicab against the Plaintiff causing him severe injuries including fracture of the rami on the left ischium as well as pubis, subacute cervical strain, left lateral without radiculitis, and chronic and subacute left lumbar muscle strain, hereinafter designated Battery # 2.

7. Use of the taxicab herein was with Defendant Ah Sam's implied permission and was in furtherance of his business. Defendant Ah Sam was given the opportunity to

prove the use of the taxicab by his brother in connection with prostitution was not with his implied permission.

8. At the times herein concerned, Ioane was acting within the scope of his employment.

9. The Court takes judicial notice that Plaintiff was not required to use crutches during the earlier criminal trial against Loke Ioane in connection with the incident, but did use crutches during the first portions of the trial of this civil matter.

10. Plaintiff's condition was to a degree aggravated by his delay in seeking medical attention following discharge from the hospital and his failure to follow a program of physiotherapy.

11. The sum of $400 will reasonably compensate the Plaintiff for the pain suffered by him as a proximate result of Battery # 1, for which Plaintiff has prayed relief.

12. The sum of $2,800 will reasonably compensate the Plaintiff for the pain suffered by him as a proximate result of Battery # 2, for which Plaintiff has prayed for relief.

13. The sum of $3,000 will reasonably compensate the Plaintiff for proven loss of earnings and earning power as a proximate result of the injuries above described, for which Plaintiff has prayed for relief.

14. The sum of $1,000 will reasonably compensate the Plaintiff for the cost to Plaintiff of medical examinations, care and treatment reasonably required and given and reasonably certain to be required, as a result of the injuries above-described and for which Plaintiff has prayed for relief.

CONCLUSIONS OF LAW

1. Section 1.0101, 3, Code of American Samoa, adopts so much of the common law of England as is suitable to conditions in American Samoa and not inconsistent

with the section. In this sense the common law of England means that body of jurisprudence as applied and modified by the courts of the United States at the time the statute was adopted and as since construed. *Fletcher v. Los Angeles Trust and Savings Bank*, 182 Cal. 177, 187 P. 425, 427.

■ 2. In defining the common law, and where not bound otherwise by prior decision of this Court, it is ordinarily appropriate that the Restatement of the Law be followed in order to more nearly effect uniformity of decision. *Smith et al. v. Normart*, 51 Ariz. 134, 75 P.2d 38. This is in accord with the object for which the Restatement was adopted by the American Law Institute. Restatement of the Law, 4 Torts x.

■ 3. The Court has considered and rejected that the Plaintiff should be barred from bringing his action because of his connection with a group engaged in illegal prostitution. A person is not barred from recovery for an interference with legally protected interests by the fact that at the time of the interference he was committing a tort or a crime. A person does not become an outlaw and lose all of his rights by doing an illegal act. *Kapson v. Kubath*, 165 F.Supp. 542, 550–51. Restatement of the Law, 4 Torts 471, 473; Sec. 889, 889 c.

A rogue does not appeal to the conscience of the Court; yet even a rogue may have a cause of action. *Manning v. Noa*, 345 Mich. 130, 76 N.W.2d 75, 77 A.L.R.2d 955–963.

■ 4. Common carriers, by reason of the duty owed their passengers to protect them against acts of personal violence upon the part of their employees, are liable for the acts of assault and battery by their employees upon passengers, without inquiry into whether the employee was acting within the scope of his authority or in line of duty, for the carrier is practically an insurer against injury to passengers from this cause. *O'Brien v. Public Service Taxi*

*Co.* (C.A. 3 Pa.) 178 F.2d 211. 14 Am.Jur.2d 483–84, Carriers Sec. 1061.

■ 5. Chapter 25.20, Revised Code of American Samoa, was enacted to provide for the safety of the members of the general public and to permit them to recover for damages arising out of the ownership, maintenance or use of taxicabs in American Samoa. The sections constitute conditions under which the Ah Sam taxicab was permitted to operate and should be liberally construed.

Sec. 25.2001—PROOF REQUIRED FOR EACH REGISTERED VEHICLE: In order to control and regulate travel on the public highways and to provide for the public safety, effective July 1, 1967, no vehicle shall be or continue to be registered in the name of any person unless that person files with the Director of Administrative Services a certificate of insurance, or in lieu thereof a bond as provided by Section 25.2007.

Sec. 25.2003—MOTOR VEHICLE LIABILITY POLICY; DEFINED:

\*          \*          \*

(b) OWNER'S POLICY—Such owner's policy of liability insurance:

3. shall, if the vehicle is used in the transportation of passengers for hire, including taxicabs, insure the person named therein and any other person as insured, using such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicle or vehicles subject to limits exclusive of interest and costs, with respect to each such vehicles, as follows: $25,000 because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, $50,000 because of bodily injury to or death of two or more persons in any one accident and $10,000 because of injury to or destruction of property of others in any one accident.

Sec. 25.2009—DIRECT ACTION AGAINST INSURER: Notwithstanding any provision in the policy to the contrary, on any motor vehicle liability policy the injured person or his heirs or representatives shall have a right of direct action against the in-

surer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in American Samoa, and whether or not such policy contains a provision forbidding such direct action, provided that the cause of action arose in American Samoa. Such action may be brought against the insurer alone, or against both the insured and insurer. *Leonard v. Murdock*, 147 Ohio St. 103, 68 N.E.2d 86. 7 Am.Jur.2d 299–302, Automobile Insurance, Sec. 7.

6. Under R.C.A.S. 25.2003(d) and within the limits of the mandatory coverage, each compulsory motor vehicle insurance policy written in American Samoa is subject to all the provisions of Chapter 25.20 of the Revised Code.

Sec. 25.2003(d)—REQUIRED STATEMENTS IN POLICIES —Such motor vehicles liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period, and the limits of liability and shall contain an agreement or be endorsed that insurance is provided thereunder in accordance with the coverage defined in this chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this chapter.

7. The language of the policy (including the mandatory and incorporated provisions) admits of more than one construction; therefore the one most favorable to the insured must be adopted.

Even were we to conclude that the terms used by the insurance company to spell out its liability were susceptible of more than the simple meaning we have already indicated, this would, of course be of no benefit to the appellant. This is so because all must agree that one perfectly permissible construction of the words would be such as would comprehend the acts resulting in this injury. Thus, there would come into play the rule which appellant recognizes as applicable in Texas: That if the language of an insurance policy admits of more than one construction, that most favorable to the insured must be adopted. *McCaleb v. Continental Casualty Co.*, 132 Tex. 65, 116 S.W.2d 679; *Red Ball Motor Freight v. Employers Mutual Liability Insurance Co.*, supra. *Fidelity & Casualty Co. v. Lott*, 273 F.2d 500, 502.

■ 8. The word "accident" as used in R.C.A.S. 25.2003 (b)3, of the Compulsory Liability Insurance Statute was intended to include a battery where (a) the occurrence is accidental from the standpoint of the injured person and (b) where the battery was not authorized or consented to by the Defendant owner.

The question arises not infrequently whether a personal injury intentionally inflicted may be considered to be the result of an accident within the meaning of a liability policy. The answer to the question depends on whose standpoint is the basis of consideration. From the standpoint of an aggressor an injury willfully inflicted upon another is not an accident; but from that of the victim of an uninvited and unprovoked aggression, the injury is accidental. His right to redress does not depend upon the state of mind of the one who injured him. *Georgia Casualty Co. v. Alden Mills*, 156 Miss. 853, 127 So. 555, 73 A.L.R. 408; *Hartford Accident & Indemnity Co. v. Wolbarst*, 95 N.H. 40, 57 A.2d 151; *Fox Wisconsin Corporation v. Century Indemnity Co.*, 219 Wis. 549, 263 N.W. 567; *Tedesco v. Maryland Casualty Co.*, 127 Conn. 533, 18 A.2d 357, 132 A.L.R. 1259; *Pettit Grain & Potato Co. v. Northern Pacific Ry. Co.*, 227 Minn. 225, 35 N.W.2d 127; *Appleman's Insurance Law and Practice*, Section 4252; 33 A.L.R.2d 1025. *Haser v. Maryland Casualty Co.*, 78 N.D. 893, 53 N.W.2d 508; 33 A.L.R.2d 1018. 7 Am.Jur.2d 388, Automobile Insurance Sec. 83–84.

■ 9. The policy specifies that the purpose for which the automobile was to be used is as a taxi. Batteries #1 and #2 are liabilities imposed by law arising out of the ownership and use of the taxicab. *Green Bus Lines Inc. v. Ocean Accident & Guaranty Corp.*, 287 N.Y. 309, 39 N.E.2d 251. See discussion of *Green Bus Lines Case* in 162 A.L.R. 241–248.

10. The driver of the taxi, Loke Ioane, who used the taxi with the permission of the insured, is within the definition of "insured" as set forth in the statute and in the policy. R.C.A.S. 25.2003 (b) (3), supra.

*Insuring Agreement IV:*

DEFINITION OF INSURED: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:

a. to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;

b. to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer. *Haser v. Maryland Casualty Co.,* supra.

■ 11. No public policy is violated by protecting the insured Ah Sam against unauthorized acts of his servant. *Haser v. Maryland Casualty Co.,* supra, 7 Am.Jur.2d 299–300, Automobile Insurance Sec. 7.

■ 12. Defendants are liable under the statute despite the language of Policy Condition 9 that "assault and battery shall be deemed an accident unless committed by or at the direction of the insured."

Plaintiff, the named insured, would obviously not be excluded from coverage for the wilful acts of his son if the clause defining additional insured persons did not appear in the policy. That clause was intended to benefit plaintiff by broadening coverage, and its purpose would be defeated if coverage were restricted by using the clause to construe the exclusion provision favorably to defendant company. Cf. *Western Casualty & Surety Co. v. Aponaug Mfg. Co.,* 5 Cir., 197 F.2d 673, 674; *Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n,* 305 N.Y. 243, 112 N.E.2d 273, 275. *Arenson v. National Automobile and Casualty Co.,* 45 Cal.2d 81, 286 P.2d 816, 818, 2 A.L.R.3rd 1238, 1247.

772

■ 13. The medical expense evidence submitted by Plaintiff and received into evidence should be considered regardless of whether an amendment was offered at the proper time. Federal Rules of Civil Procedure 15.

14. Plaintiff is entitled to recover from Defendants the amount of $7,200 plus costs of suit.